AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
AUG 15 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.  19MJ3448
One (1) black Doppio cellular telephone, Model F1811, )
IMEI: 352897086264119 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 952, 960, & 963 | Importation of a Controlled Substance, Conspiracy to Import a Controlled Substance |

The application is based on these facts:
See attached affidavit of Special Agent Josue Lopez

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Josue Lopez, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/15/19

*Judge's signature*

City and state: San Diego, California     Hon. Allison H. Goddard, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case Number: |
| **One Black Doppio Cell Phone Model F1811 IMEI: 352897086264119** | ) AFFIDAVIT OF SPECIAL<br>) AGENT JOSUE LOPEZ<br>) IN SUPPORT OF SEARCH<br>) WARRANT<br>)<br>) |

## AFFIDAVIT

I, Josue Lopez, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents of the Department of Homeland Security, Homeland Security Investigations, for the following target property: one cellular telephone seized on January 31, 2019, from SERGIO ACEVEDO ("ACEVEDO"), at the San Ysidro, CA Port of Entry. The cellular telephone is as follows: (1) one black Doppio Cellular Telephone, Model F1811, IMEI Number 352897086264119 ("**Subject Telephone #1**").

2. **Subject Telephone #1** was seized from ACEVEDO when Customs and Border Protection Officers ("CBPOs") encountered ACEVEDO at the San Ysidro, California Port of Entry on January 31, 2019. ACEVEDO was the driver and sole occupant of gold 1997 Jeep Grand Cherokee bearing a Mexico license plate, number 3VOW715. Upon inspection of the vehicle, CBPOs discovered 55 packages of

1

methamphetamine, totaling approximately 26.68 kilograms (58.81 pounds), concealed in the rear seats and spare tire of the vehicle. It is believed that **Subject Telephone #1** was used by ACEVEDO to communicate with co-conspirators during the drug smuggling event. ACEVEDO has been charged with importation of a controlled substance (methamphetamine) in the Southern District of California. Probable cause exists to believe that **Subject Telephone #1** contains evidence relating to violations of Title 21, United States Code Sections 952, 960 and 963. **Subject Telephone #1** is currently in an evidence vault located at 9495 Customs House Plaza, San Diego, CA 92154.

3.  Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952, 960 and 963; and (2) property designed or intended for use, or which is or has been used as a means of committing criminal offenses. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Subject Telephone #1**, it does not contain all the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

4.  I have been employed as a Special Agent with HSI since March 2018. Prior to that, I was as a United States Border Patrol Agent starting May 2008. I am currently assigned to the San Ysidro Contraband Smuggling Group 3, which investigates violations pertaining to the illegal possession, transportation, and distribution of controlled substances. I am also cross-designated by the Drug

Enforcement Administration to conduct narcotics investigations and to make arrests based on violations of Title 21 of the United States Code.

5. As part of my training to become a Special Agent, I completed a 27-week course regarding criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia. I have attended and successfully completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have also completed training at the U.S. Border Patrol Academy in Artesia, New Mexico.

6. During my tenure with HSI, I have participated in numerous investigations relating to narcotics smuggling, and I have also received specific training in the methods used by narcotics traffickers to import and distribute drugs, including training regarding the use of cellular phones and other electronic devices by narcotics traffickers to operate large distribution networks.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence, including, but not limited to, cellular phone-related evidence, such as text messages This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephone contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular

telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile, and they have instant access to telephone calls, text, web, and voice messages;

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

    f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module ("SIM") Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled

substance from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated

### FACTS SUPPORTING PROBABLE CAUSE

10. On January 31, 2019, at approximately 3:08 a.m., ACEVEDO applied for admission into the United States from Mexico at the San Ysidro Port of Entry, San Ysidro California. ACEVEDO was the driver and sole occupant of a gold 1997 Jeep Cherokee bearing license plate, number 3VOW715 ("the vehicle"). ACEVEDO presented a passport card as an entry document. A CBPO entered ACEVEDO's passport information and received a computer-generated alert. The CBPO received a

negative declaration from ACEVEDO and referred the vehicle for secondary inspection. At secondary inspection a CBPO observed that the spare tire was covered and screwed inside the vehicle rear area on the left side of the vehicle. After removing the cover and unscrewing the tire for further inspection, he noticed that the tire was heavy. The CBPOs ran the vehicle through the Z-portal where anomalies were seen in the spare tire located in the trunk area. The subsequent inspection of the vehicle revealed 40 packages concealed in the spare tire.

11. A Human and Narcotics Detector Dog then screened the vehicle and alerted to the rear seat of the vehicle. Subsequent inspection revealed 15 packages concealed in the rear seat. Randomly selected packages was field-tested, and it tested positive for methamphetamine. The 55 packages collectively weighed approximately 26.68 kilograms (58.81 pounds).

12. ACEVEDO was arrested in violation of 21 U.S.C. §§ 952 & 960, Importation of Controlled Substances.

13. At the time of ACEVEDO's arrest, CBPOs collected and seized **Subject Telephone #1** from ACEVEDO.

14. ACEVEDO was read his Miranda rights, and agreed to speak to agents without an attorney present. ACEVEDO stated that he had been arrested in the past for smuggling narcotics concealed in a spare tire and for smuggling people across the border. ACEVEDO stated that his girlfriend was also arrested and is serving time for smuggling narcotics.

15. ACEVEDO stated that he had taken the vehicle to a mechanic shop to get an oil change but then changed his story and stated he had also taken the vehicle there to get the spare tire repaired. ACEVEDO then stated it was not a repair shop but instead it was his friend's house. ACEVEDO could not remember his friend's last name. ACEVEDO then stated the person was not a friend but more like an

acquaintance. ACEVEDO could not provide details about his past work and was vague.

16. Based upon my experience and investigation in this case and others, I believe that ACEVEDO, as well as other persons yet unknown, were involved in an on-going conspiracy to import methamphetamine or some other prohibited narcotics and to distribute those prohibited narcotics within the United States. Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin months or weeks before drugs are loaded in the car and includes coordination on crossing the border to "burn plates" (develop a crossing history or pattern). ACEVEDO's border crossing history going back 12 months from the time of his arrest indicates that he crossed frequently. During that period, ACEVEDO crossed 154 times. I believe that ACEVEDO was crossing as part of this importation conspiracy, and **Subject Telephone #1** was likely used in furtherance of the importation conspiracy during this period. Given these facts, I respectfully request permission to search **Subject Telephone #1** for data beginning on July 1, 2018, up to and including January 31, 2019.

15. In sum, based on my experience investigating narcotics smugglers, I believe that ACEVEDO may have used **Subject Telephone #1** to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites like Facebook, pictures and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities. This type of information would be stored on **Subject Telephone #1**.

## SEARCH METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed

9

exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that ACEVEDO used **Subject Telephone #1** to facilitate the offense of importation of a controlled substance. **Subject Telephone #1** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of a crime, or property designed or intended for use, or which is or has been used as a means of committing criminal offenses of violations of Title 21, United States Code, Sections 952, 960 and 963.

21. Because **Subject Telephone #1** was promptly seized at the time ACEVEDO was arrested and has been securely stored, there is probable cause to believe that evidence of illegal activity committed by ACEVEDO continues to exist on **Subject Telephone #1**. For the reasons detailed above, I believe the appropriate range for the searches is from July 1, 2019 to January 31, 2019.

22. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security

Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Josue Lopez
Special Agent, HSI

Subscribed and sworn to before me this 15th day of August, 2019.

ALLISON H. GODDARD
United States Magistrate Judge

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

One black Doppio cellular telephone, Model F1811, IMEI: 352897086264119 seized from Sergio ACEVEDO, pictured below:

 

The **Subject Telephone #1** is currently in an evidence vault located at 9495 Customhouse Plaza, San Diego, CA 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular phones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone for evidence described below. The seizure and search of the cellular phone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular phone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 1, 2018, up to and including January 31, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Subject Telephone #1**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**